RECEIVED
IN MONROE, LA

JAN 0 9 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

JAMES A. MAHONEY                       CIVIL ACTION NO. 05-2156

VERSUS                                 JUDGE ROBERT G. JAMES

PILGRIM'S PRIDE CORP.                  MAG. JUDGE KAREN L. HAYES

**MEMORANDUM RULING**

Pending before the Court is Defendant Pilgrim's Pride Corporation's ("PPC's") Motion

to Exclude Testimony from Frank Loeffler [Doc. No. 10]. For the following reasons, PPC's

Motion is GRANTED IN PART and DENIED IN PART.

## I.    PPC'S MOTION TO EXCLUDE

### A.    CAUSE AND ORIGIN OF THE EXPLOSION

PPC argues that Frank Loeffler ("Loeffler"), Plaintiff James A. Mahoney's

("Mahoney's") expert witness, is not qualified to offer an opinion regarding the cause and origin

of the explosion. Loeffler admits he is not an expert in the field of fire science, or the

investigation and determination of the cause and origin of fires and explosions. [Doc. No. 10,

Exh. A, p. 37, lines 10-18; hereinafter referred to as "Depo."]. Loeffler also testified that he has

no formal education or training in this field [Depo. p. 37, lines 19-24]; he has never been

accepted by a court as an expert in this field [Depo. p. 39, lines 1-4]; and he did not review the

recognized standard in the field prior to issuing his opinion [Depo. p. 46, lines 5-12].

Mahoney argues that although Loeffler is not a cause and origin expert, he has technical

1

knowledge as to what causes grain conveyor systems to fail and how to prevent fires from occurring. He has been accepted as an expert in the design of conveyor systems [Depo. pp. 23-30] and employed in the investigation of several conveyor fires [Depo. pp. 37-38, 129-131].

"When an expert witness honestly and forthrightly testifies that he is not qualified in a particular area. . . the witness is unqualified, under *Daubert*, to provide an expert opinion in that area. . . " and his testimony must be excluded. *Shelter Ins. Co. v. Ford Motor Co.*, No. 06-60295, 2006 U.S. App. LEXIS 31120, at *7 (5th Cir. Dec. 18, 2006) (unpublished decision).

In *Shelter Insurance Company*, the plaintiffs alleged that the failure of a switch in a car manufactured by Ford caused a fire in their garage. They retained an automotive expert who admitted that he was not trained in the field of fire science. The district court excluded his testimony on the actual cause of the fire, despite the fact that he had investigated approximately 190 vehicle fires. The district court reasoned that "[i]n this case, an expert is needed to demonstrate that with a reasonable scientific certainty, the subject switch actually caused the subject fire. Miller does not possess the training or education in fire science necessary to do this. Experience alone in fire science is insufficient." *Shelter Ins. Co. v. Ford Motor Co.*, No. 03-150, 2006 U.S. Dist. LEXIS 15238, at *10-11 (N.D. Miss. Feb. 8, 2006), *affirmed*, *Shelter Ins. Co.*, 2006 U.S. App. LEXIS 31120.

The facts of this case are analogous. While Loeffler is undisputedly qualified and permitted to opine whether the conveyor system malfunctioned, he is not qualified to render an expert opinion on the precise cause and origin of the explosion. *Id.* at 11-12 (reasoning that the expert was "qualified by knowledge, skill, experience, training, or education to opine that the subject switch was defectively designed").

2

Therefore, PPC's Motion to Exclude is GRANTED.

## B.    OCCUPATIONAL HEALTH AND SAFETY ADMINISTRATION ("OSHA") REGULATION § 1910.272(q)

PPC contends that Loeffler should not be allowed to testify regarding PPC's compliance with § 1910.272(q) because it does not apply to the facility in question. PPC argues that § 1910.272(q) only applies to "grain elevators" with "inside bucket elevators." 29 C.F.R. § 1910.272(b)(2) ("Paragraphs (o), (p), and (q) of this section apply only to grain elevators."). While "feed mill" is not defined, "grain elevator" is defined as a facility "engaged in the receipt, handling, and storage of bulk raw agricultural commodities. . . ." 29 C.F.R. § 1910.272(c). Compared to feed mills, grain elevators store and process a larger amount of bulk raw agricultural commodities, at a higher belt speed, and primarily process grain. Because the facility in question operates at a lower speed (15,000 bushels per hour) than the average grain elevator (40-50,000 bushels per hour), PPC argues it should be characterized as a feed mill.

PPC also contends that § 1910.272(q) only applies to grain elevators with an "inside bucket elevator," or a bucket elevator with more than twenty (20) percent of its total leg height enclosed in the grain elevator. 29 C.F.R. § 1910.272(c). PPC argues that Loeffler admitted he guessed regarding the percentage of the leg that is enclosed. [Depo. pp. 100-101].

Mahoney argues that the distinction between a "grain elevator" and a "feed mill" is based on the risk of explosion. Loeffler opines that this is a dual purpose facility because it receives and stores a large amount of grain, and the belt speed and processing capacity are significantly higher than that of a typical feed mill. PPC's facility is subject to the stricter requirements of § 1910.272(q) because processing a large of amount of grain at a high belt speed increases the risk

3

of explosion.

Mahoney also argues that PPC has refused to exchange complete drawings of the facility which would allow a more accurate analysis of the structure. However, he contends that Loeffler reviewed a drawing of the elevator produced by PPC and estimated that the percentage of the leg that is enclosed is more than thirty-five (35) percent.

The Court finds that Loeffler's opinion that the facility is a grain elevator and a feed mill is consistent with the rationale of OSHA regulations. PPC has not demonstrated that Loeffler's interpretation of OSHA regulations is unreasonable, nor that Loeffler's estimate of the percentage is unreliable.

Therefore, PPC's Motion to Exclude is DENIED.

## C.    2006 NATIONAL FIRE PROTECTION ASSOCIATION ("NFPA") STANDARDS

PPC contends that Loeffler should not be allowed to testify regarding PPC's compliance with 2006 NFPA standards because it does not apply to the facility in question. PPC contends that the facility was constructed in 1990, before 2006 NFPA standards were in effect.

Mahoney argues that the PPC facility was modified in 2001, and, therefore, required to comply with 2000 NFPA standards, which Loeffler claims are substantially similar to 2006 NFPA standards.[1]  Because PPC has failed to produce complete drawings of the facility, Loeffler

---

[1]Loeffler also claims that as a practical matter, grain facilities are ordinarily compliant with current NFPA standards to obtain insurance coverage and that current NFPA standards contain relevant information regarding the commercial availability and feasibility of safety devices. The Court notes that evidence regarding PPC's insurance coverage or the feasibility/availability of precautionary measures (not currently controverted by PPC) may raise

4

compared a drawing of the facility dated in 2001 and photos taken immediately after the explosion. He contends that the 2001 drawing does not show several "chutes" which are depicted in the post-accident photos.

The Court finds that Loeffler's opinion that PPC is required to comply with 2000 NFPA standards is based on reliable evidence that the facility was modified in 2000-2001. Therefore, PPC's Motion to Exclude is DENIED.

## D.    PPC'S SAFETY PROCEDURES

PPC contends that Loeffler should not be allowed to testify regarding whether PPC complied with its safety procedures because this testimony goes beyond the scope of Loeffler's report. Further, testimony regarding these procedures will not assist the jury because the procedures are not difficult to understand.

Mahoney contends that Loeffler's report and deposition testimony placed PPC on notice of Loeffler's opinion that PPC failed to keep written records of its inspections as required internally and by OSHA. [Report, p. 6, ¶ F; Depo. p. 42, lines 1-12, p. 121, lines 4-8, pp. 121-129]. Additionally, because grain conveyor systems and regulations are complex and not easily understood, expert testimony will assist the jury.

The Court finds that expert testimony that explains the way a conveyor system works and PPC's related safety procedures will assist the jury in understanding the facts. Additionally, PPC was on notice of Loeffler's opinion regarding PPC's compliance with its safety procedures. *See Shelter Mut. Ins. Co. v. Culbertson's Ltd.*, No. 97-1609, 97-1969, 1999 U.S. Dist. LEXIS 3241,

---

other evidentiary issues. *See* Fed. R. Evid. 411; 407.

at \*14 (E.D. La. Mar. 11, 1999) (quoting *Tauzier v. Dodge*, No. 97-2444, 1998 U.S. Dist. LEXIS 6424, at \*4 (E.D. La. May 5, 1998)) ("[T]he purpose of an expert report is to notify opposing parties of the scope and content of the expert's proposed trial testimony." ); *see also Southern Pac. Transp. Co. v. Builders Transp. Inc.*, No. 90-3177, 1993 U.S. Dist. LEXIS 7380, at \*48 (E.D. La. May 25, 1993) (reasoning that where an expert is "questioned on the recently obtained information at his deposition, the deposition functions much like a supplemental expert report, and may be said to 'expand' the scope of the formal expert report.").

Therefore, PPC's Motion to Exclude is DENIED.

## II.     CONCLUSION

For the following reasons, PPC's Motion to Exclude Testimony of Frank Loeffler [Doc. No. 10] is GRANTED IN PART AND DENIED IN PART.

MONROE, LOUISIANA, this ____8____ day of January, 2007.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

6